TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
GREGORY BERNSTEIN (Cal. Bar No. 299204)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California
    Telephone: 213-894-3183
    Email:    Gregory.Bernstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>WILLIAM SADLEIR,<br><br>       Defendant. | No. CR 20-299-DMG<br><br>PLEA AGREEMENT FOR DEFENDANT<br>WILLIAM SADLEIR |

    1.    This constitutes the plea agreement between William Sadleir ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.    Defendant agrees to:

        a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts seven and ten of the indictment in <u>United States v. William Sadleir</u>, CR 20-299-DMG, which charge defendant in count seven with bank fraud, in

1

violation of 18 U.S.C. § 1344(2); and in count ten with transactional money laundering, in violation of 18 U.S.C. § 1957.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime. However, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

1  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

2  Angeles, CA 90012. Defendant agrees that defendant's ability to pay

3  criminal debt shall be assessed based on the completed Financial

4  Disclosure Statement and all required supporting documents, as well

5  as other relevant information relating to ability to pay.

6       j.   Authorize the USAO to obtain a credit report upon

7  returning a signed copy of this plea agreement.

8       k.   Consent to the USAO inspecting and copying all of

9  defendant's financial documents and financial information held by

10  the United States Probation and Pretrial Services Office.

11     3.   Defendant further agrees:

12       a.   To forfeit all right, title, and interest in and to

13  any and all monies, properties, and/or assets of any kind, derived

14  from or acquired as a result of, or used to facilitate the

15  commission of, or involved in the illegal activity to which

16  defendant is pleading guilty, specifically including, but not

17  limited to, $308,058.11 seized from JP Morgan Chase Account Bank

18  account number ending 3760 (the "Forfeitable Property").

19       b.   To the Court's entry of an order of forfeiture at or

20  before sentencing with respect to the Forfeitable Property and to

21  the forfeiture of the assets.

22       c.   That the Preliminary Order of Forfeiture shall become

23  final as to the defendant upon entry.

24       d.   To take whatever steps are necessary to pass to the

25  United States clear title to the Forfeitable Property, including,

26  without limitation, the execution of a consent decree of forfeiture

27  and the completing of any other legal documents required for the

28  transfer of title to the United States.

1              e.    Not to contest any administrative forfeiture
2    proceedings or civil judicial proceedings commenced against the
3    Forfeitable Property. If defendant submitted a claim and/or petition
4    for remission for all or part of the Forfeitable Property on behalf
5    of himself or any other individual or entity, defendant shall and
6    hereby does withdraw any such claims or petitions, and further
7    agrees to waive any right he may have to seek remission or
8    mitigation of the forfeiture of the Forfeitable Property. Defendant
9    further waives any and all notice requirements of 18 U.S.C. §
10   983(a)(1)(A).
11             f.    Not to assist any other individual in any effort
12   falsely to contest the forfeiture of the Forfeitable Property.
13             g.    Not to claim that reasonable cause to seize the
14   Forfeitable Property was lacking.
15             h.    To prevent the transfer, sale, destruction, or loss
16   of the Forfeitable Property to the extent defendant has the ability
17   to do so.
18             i.    That forfeiture of Forfeitable Property shall not be
19   counted toward satisfaction of any special assessment, fine,
20   restitution, costs, or other penalty the Court may impose.
21             j.    With respect to any criminal forfeiture ordered as a
22   result of this plea agreement, defendant waives: (1) the
23   requirements of Federal Rules of Criminal Procedure 32.2 and 43(a)
24   regarding notice of the forfeiture in the charging instrument,
25   announcements of the forfeiture at sentencing, and incorporation of
26   the forfeiture in the judgment; (2) all constitutional and statutory
27   challenges to the forfeiture (including by direct appeal, habeas
28   corpus or any other means); and (3) all constitutional, legal, and

equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

     a.   Not contest facts agreed to in this agreement.

     b.   Abide by all agreements regarding sentencing contained in this agreement.

     c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

     d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

1          e.   Recommend that the Court impose a sentence that runs

2    concurrently with the sentence imposed in <u>United States v. William</u>

3    <u>Sadleir</u>, CR 20-320-PAE (S.D.N.Y.).

4          f.   Except for criminal tax violations (including

5    conspiracy to commit such violations chargeable under 18 U.S.C.

6    § 371), not further criminally prosecute defendant for violations of

7    18 U.S.C. §§ 1001, 1014, 1028, 1028A, 1029, 1341, 1343, 1344, 1956,

8    or 1957, arising out of defendant's conduct described in the agreed-

9    to factual basis set forth in this agreement. Defendant understands

10   that the USAO is free to criminally prosecute defendant for any

11   other unlawful past conduct or any unlawful conduct that occurs

12   after the date of this agreement. Defendant agrees that at the time

13   of sentencing the Court may consider the uncharged conduct in

14   determining the applicable Sentencing Guidelines range, the

15   propriety and extent of any departure from that range, and the

16   sentence to be imposed after consideration of the Sentencing

17   Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

18                          <u>NATURE OF THE OFFENSE</u>

19        5.   Defendant understands that for defendant to be guilty of

20   the crime charged in count seven, that is, bank fraud, in violation

21   of 18 U.S.C. § 1344(2), the following must be true: First, defendant

22   knowingly devised a plan or scheme to obtain money or property from

23   the financial institution specified in the indictment by false

24   promises or statements. Second, the promises or statements were

25   material, that is, they had a natural tendency to influence, or were

26   capable of influencing, a financial institution to part with money

27   or property. Third, defendant acted with the intent to defraud.

28

1    Fourth, the financial institution was federally chartered or
2    insured.
3        A defendant's belief that the victims of the fraud will be paid
4    in the future or will sustain no economic loss is no defense to the
5    crime.
6        6.    Defendant understands that for defendant to be guilty of
7    the crime charged in count ten, that is, transactional money
8    laundering, in violation of 18 U.S.C. § 1957, the following must be
9    true: First, defendant knowingly engaged or attempted to engage in a
10   monetary transaction. Second, defendant knew the transaction
11   involved criminally derived property. Third, the property had a
12   value greater than $10,000. Fourth, the property was, in fact,
13   derived from one or more of the specified unlawful activities
14   alleged in the indictment. Fifth, the transaction occurred in the
15   United States.
16       The term "monetary transaction" means the deposit, withdrawal,
17   transfer, or exchange, in or affecting interstate commerce, of funds
18   or a monetary instrument by, through, or to a financial institution.
19       The term "criminally derived property" means any property
20   constituting, or derived from, the proceeds obtained from a criminal
21   offense. The government must prove that defendant knew that the
22   property involved in the monetary transaction constituted, or was
23   derived from, proceeds obtained by some criminal offense. The
24   government does not have to prove that defendant knew the precise
25   nature of that criminal offense, or knew the property involved in
26   the transaction represented the proceeds of one or more of the
27   specified unlawful activities alleged in the indictment.
28

1    Although the government must prove that, of the property at
2  issue more than $10,000 was criminally derived, the government does
3  not have to prove that all the property at issue was criminally
4  derived.

<u>PENALTIES AND RESTITUTION</u>

6    7.   Defendant understands that the statutory maximum sentence
7  that the Court can impose for a violation of 18 U.S.C. § 1344(2) is:
8  30 years' imprisonment; a five-year period of supervised release; a
9  fine of $1,000,000 or twice the gross gain or gross loss resulting
10  from the offense, whichever is greatest; and a mandatory special
11  assessment of $100.

12    8.   Defendant understands that the statutory maximum sentence
13  that the Court can impose for a violation of 18 U.S.C. § 1957 is: 10
14  years' imprisonment; a three-year period of supervised release; a
15  fine of $250,000 or twice the gross gain or gross loss resulting
16  from the offense, whichever is greatest; and a mandatory special
17  assessment of $100.

18    9.   Defendant understands, therefore, that the total maximum
19  sentence for all offenses to which defendant is pleading guilty is:
20  50 years' imprisonment, a five-year period of supervised release, a
21  fine of $1,500,000 or twice the gross gain or gross loss resulting
22  from the offenses, whichever is greatest, and a mandatory special
23  assessment of $200.

24    10.  Defendant understands that defendant will be required to
25  pay full restitution to the victims of the offenses to which
26  defendant is pleading guilty. Defendant agrees that, in return for
27  the USAO's compliance with its obligations under this agreement, the
28  Court may order restitution to persons other than the victims of the

offense to which defendant is pleading guilty and in amounts greater
than those alleged in the count to which defendant is pleading
guilty. In particular, defendant agrees that the Court may order
restitution to any victim of any of the following for any losses
suffered by that victim as a result: (a) any relevant conduct, as
defined in U.S.S.G. § 1B1.3, in connection with the offense to which
defendant is pleading guilty; and (b) any counts dismissed and
charges not prosecuted pursuant to this agreement as well as all
relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with
those counts and charges. The parties currently believe that the
applicable amount of restitution is approximately **$282,566.89,** but
recognize and agree that this amount could change based on facts
that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be
subject to various restrictions and requirements. Defendant
understands that if defendant violates one or more of the conditions
of any supervised release imposed, defendant may be returned to
prison for all or part of the term of supervised release authorized
by statute for the offense that resulted in the term of supervised
release, which could result in defendant serving a total term of
imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that he is pleading guilty to a felony and
that it is a federal crime for a convicted felon to possess a

1  firearm or ammunition. Defendant understands that the conviction in
2  this case may also subject defendant to various other collateral
3  consequences, including but not limited to revocation of probation,
4  parole, or supervised release in another case and suspension or
5  revocation of a professional license. Defendant understands that
6  unanticipated collateral consequences will not serve as grounds to
7  withdraw defendant's guilty plea.

8      13.  Defendant and his counsel have discussed the fact that,
9  and defendant understands that, if defendant is not a United States
10 citizen, the conviction in this case makes it practically inevitable
11 and a virtual certainty that defendant will be removed or deported
12 from the United States. Defendant may also be denied United States
13 citizenship and admission to the United States in the future.
14 Defendant understands that while there may be arguments that
15 defendant can raise in immigration proceedings to avoid or delay
16 removal, removal is presumptively mandatory and a virtual certainty
17 in this case. Defendant further understands that removal and
18 immigration consequences are the subject of a separate proceeding
19 and that no one, including his attorney or the Court, can predict to
20 an absolute certainty the effect of his conviction on his
21 immigration status. Defendant nevertheless affirms that he wants to
22 plead guilty regardless of any immigration consequences that his
23 plea may entail, even if the consequence is automatic removal from
24 the United States.

25                          FACTUAL BASIS

26     14.  Defendant admits that defendant is, in fact, guilty of the
27 offenses to which defendant is agreeing to plead guilty. Defendant
28 and the USAO agree to the statement of facts provided below and

                                10

1  agree that this statement of facts is sufficient to support the
2  pleas of guilty to the charges described in this agreement and to
3  establish the Sentencing Guidelines factors set forth in paragraph
4  15 below, but is not meant to be a complete recitation of all facts
5  relevant to the underlying criminal conduct or all facts known to
6  either party that relate to that conduct.
7      On April 7, 2020, defendant, in Los Angeles County, within the
8  Central District of California, and with the specific intent to
9  defraud Bank A and the Small Business Administration ("SBA"),
10  executed a plan and scheme to obtain money from Bank A, a financial
11  institution that the Federal Deposit Insurance Corporation insured,
12  by material false promises and statements.
13      On May 1, 2020, defendant, in Los Angeles County, within the
14  Central District of California, knowingly engaged in a monetary
15  transaction, knowing that the transaction involved more than $10,000
16  in criminally derived property that defendant knew he derived from
17  bank fraud.
18      Specifically, defendant, a resident of Beverly Hills,
19  California, was a film industry executive who operated Aviron
20  Pictures LLC ("Aviron Pictures"), a Los Angeles, California-based
21  film production company, and its related entities, including Aviron
22  Group LLC ("Aviron Group"), Aviron Releasing LLC DBA Regatta
23  ("Aviron Releasing"), and Aviron Licensing LLC ("Aviron Licensing")
24  (collectively, "the Aviron companies").
25      In December 2019, defendant was terminated from his managerial
26  position at Aviron Pictures when Aviron's largest investor,
27  BlackRock Multi-Sector Income Trust ("Blackrock"), discovered that
28  defendant stole funds that had been invested into Aviron Pictures.

11

1  Thereafter, Blackrock began the process of terminating Aviron
2  Pictures employees and shutting down the company. By early 2020,
3  Aviron Pictures had fewer than 10 employees, and Aviron Group,
4  Aviron Releasing, and Aviron Licensing had no employees and were no
5  longer operational.
6      In April 2020, from Los Angeles County, within the Central
7  District of California, defendant submitted fraudulent Paycheck
8  Protection Program ("PPP") loan applications on behalf of Aviron
9  Group, Aviron Releasing, and Aviron Licensing through which
10  defendant falsely represented to the SBA and the SBA's
11  administrating financial institution, Bank A, that each company was
12  operational, had 33 employees, and was incurring substantial
13  quarterly payroll costs, and that defendant would spend the PPP loan
14  proceeds on business operational expenses.
15      Specifically, defendant, with the specific intent to defraud
16  Bank A and the SBA, submitted the following PPP loan applications to
17  Bank A, and in doing so knowingly made the following material false
18  representations to Bank A:

19  
20     • On April 7, 2020, defendant submitted a PPP loan application to
     Bank A in the name of Aviron Group. On the application,
21       defendant knowingly and falsely represented to Bank A that
     Aviron Group had 33 employees and $236,250 in quarterly payroll
22       expenses.

23     • On April 9, 2020, defendant submitted a PPP application to Bank
     A in the name of Aviron Releasing. On the application,
24       defendant knowingly and falsely represented to Bank A that
     Aviron Releasing had 33 employees and $224,418 in quarterly
25       payroll expenses.

26  
27     • On April 24, 2020, defendant submitted a PPP application to
     Bank A in the name of Aviron Licensing. On the application,
28       defendant knowingly and falsely represented to Bank A that

Aviron Licensing had 33 employees and $224,418 in quarterly payroll expenses.

Bank A approved the three PPP loan applications, and on May 1, 2020, credited the operating accounts of Aviron Group, Aviron Releasing, and Aviron Licensing with $1,712,715 in fraudulently-obtained PPP loan proceeds ("the fraudulent loan proceeds").

Later that day, on May 1, 2020, from Los Angeles County, defendant transferred $561,375.52 of the fraudulent loan proceeds from the Aviron Licensing account to the Aviron Group account, and $561,062.35 of the fraudulent loan proceeds from the Aviron Releasing account to the Aviron Group account. Both transfers were monetary transactions through a financial institution (Bank A), and defendant knew that each transaction involved more than $10,000 in criminally derived property that were in fact derived from bank fraud, that is, the fraudulent PPP loan applications in the names of Aviron Releasing and Aviron Licensing.

On May 4, 2020, defendant transferred $966,000 of the fraudulent loan proceeds loan proceeds from the Aviron Group account to his personal checking account at Bank A. From his personal checking account, defendant fraudulently used at least $409,103 on personal bank transfers and expenditures. For instance, defendant transferred $185,000 to the personal accounts of his wife, transferred $98,000 to a personal account in defendant's name, used more than $85,000 to pay down credit cards held in the names of defendant and his wife, and expended a substantial amount of the fraudulent loan proceeds on utility bills, mortgage expenses, and his personal attorney, among other things. Defendant did not use any of the fraudulent loan proceeds to pay employees of the Aviron companies.

13

1    Thereafter, federal agents seized $308,058.11 of the fraudulent

2    loan proceeds from the Aviron Group operating account, and defendant

3    returned $1,122,090 of that fraudulent loan proceeds to Bank A. The

4    resulting loss from defendant's fraudulent PPP loan scheme to the

5    SBA, which guaranteed defendant's fraudulent PPP loans, was

6    $282,566.89.

7                          SENTENCING FACTORS

8        15.  Defendant understands that in determining defendant's

9    sentence the Court is required to calculate the applicable

10   Sentencing Guidelines range and to consider that range, possible

11   departures under the Sentencing Guidelines, and the other sentencing

12   factors set forth in 18 U.S.C. § 3553(a). Defendant understands that

13   the Sentencing Guidelines are advisory only, that defendant cannot

14   have any expectation of receiving a sentence within the calculated

15   Sentencing Guidelines range, and that after considering the

16   Sentencing Guidelines and the other § 3553(a) factors, the Court

17   will be free to exercise its discretion to impose any sentence it

18   finds appropriate up to the maximum set by statute for the crimes of

19   conviction.

20       16.  Defendant and the USAO agree to the following applicable

21   Sentencing Guidelines factors:

22   Base Offense Level:          25    U.S.S.G. §§ 2S1.1(a)1), 2B1.1(a)(1),

23                                             (b)(1)(I), (b)(17)(A)

24   Money laundering             +1          U.S.S.G. § 2S1.1(b)(2)(A)

25   Defendant and the USAO reserve the right to argue that additional

26   specific offense characteristics, adjustments, and departures under

27   the Sentencing Guidelines are appropriate.

28

17.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.   Defendant understands that by pleading guilty, defendant gives up the following rights:

       a.   The right to persist in a plea of not guilty.

       b.   The right to a speedy and public trial by jury.

       c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

       d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

       e.   The right to confront and cross-examine witnesses against defendant.

       f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

       g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF RETURN OF DIGITAL DATA

20.   Understanding that the government has in its possession digital devices and/or digital media seized in connection with this case, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

WAIVER OF APPEAL OF CONVICTION

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of **24** and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and

16

1   impose any portion of the sentence; (b) the term of imprisonment

2   imposed by the Court; (c) the fine imposed by the Court, provided it

3   is within the statutory maximum; (d) to the extent permitted by law,

4   the constitutionality or legality of defendant's sentence, provided

5   it is within the statutory maximum; (e) the amount and terms of any

6   restitution order, provided it requires payment of no more than

7   **$282,566.89**; (f) the term of probation or supervised release imposed

8   by the Court, provided it is within the statutory maximum; and

9   (g) any of the following conditions of probation or supervised

10  release imposed by the Court: the conditions set forth in Second

11  Amended General Order 20-04 of this Court; the drug testing

12  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

13  alcohol and drug use conditions authorized by 18 U.S.C.

14  § 3563(b)(7).

15      23.  The USAO agrees that, provided (a) all portions of the

16  sentence are at or below the statutory maximum specified above and

17  (b) the Court imposes a term of imprisonment within or above the

18  range corresponding to an offense level of **23** and the criminal

19  history category calculated by the Court, the USAO gives up its

20  right to appeal any portion of the sentence.

21                    WAIVER OF COLLATERAL ATTACK

22      24.  Defendant also gives up any right to bring a post-

23  conviction collateral attack on the convictions or sentence,

24  including any order of restitution, except a post-conviction

25  collateral attack based on a claim of ineffective assistance of

26  counsel, a claim of newly discovered evidence, or an explicitly

27  retroactive change in the applicable Sentencing Guidelines,

28  sentencing statutes, or statutes of conviction. Defendant

1  understands that this waiver includes, but is not limited to,

2  arguments that the statutes to which defendant is pleading guilty is

3  unconstitutional, and any and all claims that the statement of facts

4  provided herein is insufficient to support defendant's pleas of

5  guilty.

6                 RESULT OF WITHDRAWAL OF GUILTY PLEA

7       25.  Defendant agrees that if, after entering a guilty plea

8  pursuant to this agreement, defendant seeks to withdraw and succeeds

9  in withdrawing defendant's guilty pleas on any basis other than a

10  claim and finding that entry into this plea agreement was

11  involuntary, then (a) the USAO will be relieved of all of its

12  obligations under this agreement; and (b) should the USAO choose to

13  pursue any charge that was either dismissed or not filed as a result

14  of this agreement, then (i) any applicable statute of limitations

15  will be tolled between the date of defendant's signing of this

16  agreement and the filing commencing any such action; and

17  (ii) defendant waives and gives up all defenses based on the statute

18  of limitations, any claim of pre-indictment delay, or any speedy

19  trial claim with respect to any such action, except to the extent

20  that such defenses existed as of the date of defendant's signing

21  this agreement.

22              RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23       26.  Defendant agrees that if the counts of conviction are

24  vacated, reversed, or set aside, both the USAO and defendant will be

25  released from all their obligations under this agreement.

26

27

28

EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the effective date of this Agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to

19

the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

30.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to

maintain its view that the calculations in paragraph 17 are
consistent with the facts of this case. While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

32.   Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to
the maximum established by statute, defendant cannot, for that
reason, withdraw defendant's guilty plea, and defendant will remain
bound to fulfill all defendant's obligations under this agreement.
Defendant understands that no one -- not the prosecutor, defendant's
attorney, or the Court -- can make a binding prediction or promise
regarding the sentence defendant will receive, except that it will
be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

33.   Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the
USAO and defendant or defendant's attorney, and that no additional
promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

//
//
//
//

21

1

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      34.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 TRACY L. WILKISON
United States Attorney

9

10 _____          3/9/22
                                       _____
11 GREGORY BERNSTEIN                    Date
Assistant United States Attorney

12 _____           March 8, 2022
                                       _____
13 William Sadleir                      Date
Defendant

14 _____           3/8/2022
                                       _____
15 Adam Olin                            Date
Attorney for Defendant
16 William Sadleir

17

18

19

20

21

22

23

24

25

26

27

28

                              22

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_William L. Sadleir_

William Sadleir
Defendant

March 8, 2022
Date

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am William Sadleir's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.


Adam Olin                                    3/8/2022
Attorney for Defendant                       Date
William Sadleir